So we will proceed now to the next case on our calendar, which is CYBERNET VENTURES Incorporated v. HARTFORD INSURANCE COMPANY of the Midwest. For the Plaintiff Appellant, we have Mr. Segura, and then for the Defendant Appellee, we have Mr. Weisberg. Good morning to both of you. This case is set for 20 minutes argument maximum per side. So Mr. Segura, in arguing the Appellant's side, if you'd like to make rebuttal argument, please stop short of using up your full 20 minutes. In other words, you can reserve whatever time you want, but that clocks the total time. Your Honor. May it please the Court, Steve Segura, appearing on behalf of Appellant Cybernet Ventures, Inc. By this appeal, Cybernet seeks to reverse the finding of the U.S. District Court of summary judgment in favor of Hartford Insurance Company, specifically the finding by the U.S. District Court that no conflict of interest arose arising out of Hartford's reservation of rights letter, and also the District Court's finding that Hartford had no duty to provide independent, conflict-free counsel as a result of Cybernet's actions that breached a cooperation clause and resulted in substantial prejudice to Hartford Insurance Company. Is it true that there was no conflict of liability? Pardon me? There was no conflict on the question of liability? There was no conflict on the question of whether or not Hartford owed a defense to Cybernet? I didn't ask that. Is there a conflict arising out of the question of liability? Of Cybernet's liability, the perfect 10? Yeah. Yes, there was. Okay. Okay. So to understand this case is to understand that initially Hartford reserved its rights by July 5, 2001. I want you to go back to that last one a minute, Judge Fieser's question. Are you saying counsel defending Cybernet had a conflict of interest in defending against liability? Or are you just saying that Cybernet disputed liability? I'm saying that Cybernet disputed liability. What I thought Judge Fieser was asking was whether there was a conflict of interest of the counsel who appointed by Hartford, whether that counsel would have a conflict in defending Cybernet against liability, the perfect 10. Yes, it would. Then please explain the nature of that conflict. Certainly, Your Honor, I'd love to. By nature of its reservation of rights, what Hartford did was it withdrew a reservation with regard to contractual knowing and willful conduct related to copyright infringement. But what it did not do is make any mention to the ability by Hartford to deny coverage based on violation of Insurance Code Section 533 regarding willful conduct. Therefore, in defending the copyright claim, the insurer retained counsel could vigorously defend a copyright infringement claim. However, in the underlying perfect 10 action, the plaintiff perfect 10 also sought a statutory enhancement of copyright violations. But how could the lawyer, I mean, could the lawyer really take the position my client Cybernet is not guilty of copyright infringement but is guilty of doing it willfully? How could that occur? It's not that he would take that affirmative position, Your Honor. It's the conduct in how he defended the case. For example, he could vigorously defend the concept that there was no infringement. However, not so vigorously defend the concept of a knowing or willful violation of copyright infringement for purposes of statutory enhancement of damages. OK. Now I understand. So is a damages dispute grounds for disqualification of counsel? In other words, is that really a dispute that comes under commas? Well, there are some cases that suggest where the base of the dispute is merely damages. There does not arise a commas obligation. But in this case, it's not the damages that are in dispute. It's the conduct that leads to the damages. For example, under 17, you had always a case. I mean, punitive damages, for example, to qualify for punitive damage, you have to show that you're entitled to some damages and then you have to go the next step. But you're always looking at the conduct that exacerbates the damages. But that doesn't mean it's not a damages claim. That's correct. But in this particular case, the conduct which would be used by Harper to deny coverage was also being litigated in the underlying dispute. For example, there was an issue of whether my client's conduct was knowing or willful or intentional for purposes of seeking enhanced statutory damages under 17 U.S.C. section 504. That is also precisely the conduct that is at issue in deciding whether or not insurance code section 533, which prohibits indemnity for willful acts, was involved as well. Therefore, insurer retained counsel could vigorously defend the copyright infringement case, but maybe not so vigorously defend or fail to seek affirmative evidence with regard to the knowing and willful or the scienter component, if you will, and therefore a conflict would arise. Therefore, I do believe that a conflict of interest did exist, and I think the U.S. District Court agreed. In fact, the District Court found that there was a potential for a conflict of interest in that any potential covered claims to the extent that they would not be covered under section 533 created that conflict. However, where the District Court, I believe, went astray was focusing on whether this conflict was potential or actual. If you look at the GAFCON case, in that case involved captive counsel by an insurer and the issue of whether or not there was a conflict of interest arose. In that case, the California Court of Appeal held, irrespective of the client's disavowal of any interest to the insurer or that the counsel would violate his ethical responsibilities, it doesn't matter. The real definitive issue is whether or not defense counsel could, in effect, control the outcome of litigation by affecting coverage issues. I think the District Court basically focused on whether or not insurer retained counsel would or would not violate his ethical responsibilities. I think that's an incorrect focus. The correct focus is whether or not they could affect coverage determinations by the conduct and the way they defended the case. And in this particular case, since there is an overlap between the coverage issues and the issues being litigated in the underlying case, there is clearly the possibility or the potential, which became actual, that insurer retained counsel could affect coverage determinations. And therefore, Harford failed to meet its burden in proving that the coverage obligations were extrinsic to the allegations of the underlying complaint. Finally, I would also like to add that Harford did not establish substantial prejudice or breach of a cooperation clause there, claiming that CyberNet failed to associate in counsel-profiled documents. I think there is at least a tribal issue of fact on this issue. I think the record reflects that at least prior to Harford denying coverage, that insurer retained counsel was being kept in the loop by e-mail and actually being involved, and that any lack of cooperation occurred after Harford completely disavowed his coverage obligations. Without any further questions, I've reserved the rest of my time. Well, once they disavowed coverage, the other side was free to engage in any settlement that was not fraudulent. I mean, it's a question of dollars, isn't it? That's correct, Your Honor. Once Harford basically considered its defense obligations terminated, then CyberNet was allowed to do it. You can't deny coverage and get out of a case and then complain about the settlement that's made if you made a mistake in denying coverage, can you? I agree with that, Your Honor. Okay.  Good morning, Your Honor. May it please the Court, Gene Weisberg for Defendant and Appellee, the Hartford Insurance Company of the Midwest. There are two main issues, and I think the panel has already touched on the first. The first, does insurance code section 533 create a conflict which always requires appointment of independent counsel whenever there's an allegation of intentional acts? And the other question is, did CyberNet's refusal to allow Hartford's appointed counsel to associate in its counsel of record  Now, with regard to the first question, the conflict claimed is based on intentional acts, but not all intentional acts are involved because the specific exclusion for intentional acts was waived. So we're only talking about willful acts under insurance code section 533, the statute by which the California legislature says to insurance companies, you may not insure these things, and that is far more limited than the exclusion that was waived. Zurich v. Killer Music tells us what that means, and it means a preconceived design to inflict injury. The term willful describes an act done with malevolence or malice in fact. It's something more than just intentionally doing an act or the intentional violation of the law, and Killer Music says copyright infringement is not one of those activities that is willful per se. So that is the context that we need to apply in seeing whether Hartford took the appropriate position once the exclusion, the policy exclusion for intentional acts was waived. Now, the conflict must be real. As we learned in the dynamic concepts case, it must be significant, not merely theoretical, actual, not merely potential. Here, the primary objective for both the policyholder and the insurance company was a finding of no liability. No inconsistency about that. Both parties wanted a finding of no liability. That was the objective for defense counsel. There would be no incentive on the part of Hartford to attach liability. So even if the lawyer were to violate his ethical obligations to represent the policyholder's best interest, there is no incentive to do anything but push for a finding of no liability. And there's no right to independent counsel when the potential conflict, if there is even a potential, can be reconciled such as by defense based on total non-liability. The cases tell us that, and that's the situation we had here. So we have no real conflict. We have a theoretically potential conflict but no real conflict because this is copyright infringement, and the elements are really very simple. Was there a copyright ownership or was there no copying of a protected work? That's it. That's what has to be proved. Intent is not an issue except for enhancement of damages. So it really is a damages issue that the court could enhance damages, but it's not a question of liability. And, of course, the standard for enhancing damages is not the 533 standard. It's a much lower standard. But I think the comment before was the appropriate comment. If the primary goal is to prove no liability, how realistically could a defense counsel say there was no infringement, no copying of a protected work, but we did it willfully? We did it with a preconceived design to inflict injury? You can't do that. Those are entirely inconsistent arguments, and if the basic premise is that a defense lawyer, even under Civil Code Section 2860, has the objective of ethically representing his client, it would not be proper to create a conflict by establishing something that is not a realistic defense approach. No lawyer will take a position that is inconsistent and contrary to the interests of his client. And to use that as a standard to say, okay, that is enough to create a conflict giving rise to independent counsel, would be saying that whenever there is an allegation of intentional acts, there is always an obligation to appoint independent counsel, and California law just does not have that requirement. This isn't the law. It should not be the law to base a requirement of appointment of independent counsel on a premise that defense counsel would do something that has no legitimate defense purpose. That is just not the law, but that is what would be required in order for the appellants to prevail on that point. Now, the second issue is whether – let me step back one second. We heard, and I saw in the brief, and we heard today about presenting a conflict-free defense. Well, the point is a conflict-free defense was presented. Once the reservation of rights was withdrawn, and all we're talking about is what California law applies, it was a conflict-free defense for the reasons I've stated. There was never a disavowal of coverage. There was a continued request repeated every couple of months. Please let us come in and defend. Please let us exercise our right to defend. So there was not an abandonment. There was a statement saying, we have a right under the policy to defend. Allow us to associate in. They would not do that. Ultimately, we said, okay, since you won't let us defend, we can't defend. The record shows – The record really disclosed what generated the hostility between the parties? I believe so, Your Honor. It was the refusal to allow insurer-appointed defense counsel to associate in, and that really ties in with the prejudice, because if you can't – if the lawyer can't associate in – What provokes that? The nature of the complaint or the nature of the business or what? A violation of 2860 provoked that, because whether there's a conflict or not, 2860 says the insurance company-appointed counsel has a right to associate in, has a right to participate in the defense, and it was violation of that that created the problem. And, in fact, to some extent, the first step worked to the policyholder's advantage, because when this – Maybe the question's a little – maybe a little beyond that. In other words, presumably, CyberNet knew about the statute, and in the face of the statute said, no, insurance company counsel, you can't come in. What in the relationship of the parties precipitated that position on the part of CyberNet, if you know? I don't know. There is no indication of that at all, because the issue first came up while there was agreement to pay for independent counsel. Hartford said, we want our counsel to associate in, understanding that independent counsel would control that defense. They refused. So the response to that, to some extent to the policyholder's advantage, was, all right, we're going to withdraw the policy reservations that gave rights to independent counsel. So there was more coverage being granted than really Hartford was obligated to do, but they decided in order to control the defense, we're going to take that step. But it still continued. So this started even when independent counsel was allowed, and it continued to not allow – independent counsel would not allow, CyberNet would not allow insured defense counsel, insured appointed counsel to associate in, to participate in the defense, which meant that counsel could not be of record, could not get on the service list, could not appear in court, could not take any positions. And that is prejudice. That creates prejudice when the parties agree by contract that if the insurance company is going to pay for the defense, they have a right to participate in that defense, and CyberNet will not allow it. That is a breach of the contract, and it is a breach of the obligations under 2860. Hartford never required CyberNet's counsel to withdraw. It was a question of associating in. They knew they had to work together. There would have been an issue as to who got to control the defense if there was a dispute as to what should be done in connection with the defense, but it never got to that point because counsel was not allowed to associate in. They were not allowed to exercise Hartford's right to defend. Now, there was a comment about, well, there's an issue of fact because there were a couple of e-mails. A couple of e-mails between August 8th and August 10th, that's all that's in the record, about meetings that had been held and would be held about procedural matters, very preliminary matters, is not sufficient to establish that there was an opportunity to exercise Hartford's right to defend. Without associating in, that right was not allowed, and there was prejudice. Now, this is not a case about settlement payments. To this day, while we know the case settled because we were told that much, we have no idea what the settlement was. We have no idea what amounts were. There was never a request for a settlement payment, so we're only talking about defense costs, and the defense costs that were incurred while independent counsel was allowed were paid. Defense costs were paid throughout the time that it was appropriate. We're talking about defense costs after the reservation of rights were removed, after CyberNet precluded Hartford's counsel from participating in the defense, and after Hartford said, we will take over the defense, we will pay all the costs with our counsel. So any of those costs were voluntarily incurred. Any costs incurred to pay defense counsel that CyberNet selected, to the exclusion of Hartford's selected counsel, were voluntary payments, and the policy is very clear that voluntary payments are not insurable. When CyberNet bought the insurance policy, it agreed that Hartford would have both the right and the duty to defend, and that Hartford would cooperate with Hartford when it sought that defense, but instead CyberNet asked for a defense, they refused to cooperate, they wanted the duty without the right, they wanted to impose the duty on Hartford without giving Hartford the right to defend or participate in that defense, and that's contrary to the policy. CyberNet does not have a right, did not have a right, to unilaterally put restrictions on the right to defend, demand payment, and come into court and say, you can't be a part of it, but you can write us checks. Both parties had the same objective, to establish that there was no copyright infringement, no conflict existed that would have allowed defense counsel to work towards this objective, and at the same time impact any coverage issues. When CyberNet chose not to cooperate and to voluntarily incur defense costs, it was making a choice that it would not obtain insurance coverage for those defense costs. Could you address the trademark claims? There was a reservation of rights on the trademark issues, right? There was a reference to the exclusion for a trademark infringement, even though there was an absolute denial of the claim, the cause of action for a trademark infringement. A denial does not give rise under 2860 to the right to independent counsel. The district court found because there was both a denial and a reference to the trademark exclusion, there might have been an ambiguity as to which it was. Was it a reservation or was it a denial? But the elements of trademark infringement, even if it is considered a reservation, do not involve intentional acts, do not involve any conduct that could be impacted by Insurance Code Section 533. So the same analysis without the enhanced damages should apply to the trademark infringement cause of action. Your Honors, for all of these reasons, we believe the district court's ruling was correct, and of course this court evaluates on its own the record and the facts that were presented, but we believe that the same result should be reached. Thank you. Thank you, Gene. To respond to the court's question about what brought about this entire dispute with regard to the issuing of a second reservation of rights, I think the record is fairly clear. What happened was Hartford initially reserved its rights to rely on an intentional acts exclusion. Well, then it waived, right? It did, but why did they waive? Because in the interim period between the first and second letters where they waived in the second letter, there was friction over the amount of hourly rate to be paid to Cumas Council. So I think what Hartford thought was in order to avoid the expense of having to pay Cumas Council and fight with them over what amount to pay them, we'll issue the second reservation of rights letter and waive the intentional acts exclusion. But what they didn't waive or didn't even mention was that there's insurance code section 533, which is basically an intentional acts exclusion that is implied in every policy by operation of law. So what they're really saying was, look, we're going to withdraw our reservation on intentional acts exclusion, and therefore you no longer have a right to independent counsel. But we'll remain silent on insurance code section 533, and therefore in the event that intentional conduct is proven in the underlying case, we'll assert that instead. So essentially what they're saying is, we'll give you the illusion that you're getting more coverage to get rid of your independent counsel, but at the same time we're going to hold 533 in reserve. So you're saying they could waive and express intentional acts exclusion and then still rely on some implied intentional acts? That's right, because insurance code section 533 is in essence an implied intentional acts exclusion by law. But if they're waiving and express intentional acts exclusion, it would seem incongruous to say they could rely on an implied exclusion for that. That's right, Your Honor. That's right, Your Honor. I think that Harper would take the position that implied exclusion could never be waived. Did they ever take that position? We didn't get that far, Your Honor. So the district court never even considered it? That's right, Your Honor. Did you raise it? Yes, we did, Your Honor. We raised it in the underlying court. What the district court focused on was that insurer-retained counsel would not commit malpractice and violate its ethical duties by taking inconsistent positions, and on that basis found that there was no actual conflict of interest giving rise to independent counsel. Weren't you covered in your brief? I didn't remember this argument in the brief. We did argue it as far as a recitation of the factual circumstances giving rise to the dispute. We did point out- Is there California case law on the matter? Well, there is California case law that says that insurer- What's the case on this issue? There's a case called Tomerland, and what that case has to do with, it's spelled T-O-M-M-E-R-L-I-N. I forget the pinpoint citation. But in that case, it discusses whether or not an insurer can ever waive this implied exclusion under insurance code section 533. Would you please give us a 28-J letter on this citation to Tomerland? Yes, Your Honor. Or just give us a gum sticker and leave it at the clerk's office on the way out of the courthouse. The library is here. Okay. So, to really look at what happened here, this insurance company, in the course of 77 days, Your Honor, went from, you have a right to independent counsel. And within 77 days, they went from that position to, all our obligations are terminated. And to me, that's patently unreasonable, given the fact there was a genuine dispute going on between the parties regarding whether or not the second reservation of rights letter really did eliminate any conflict. Because CyberNet's position was, well, yeah, you said that you're no longer going to enforce this intentional exclusion, but what about 533? You haven't addressed that. In fact, CyberNet wrote a lengthy letter on September 10, 2001, asking that they explain what their position is on 533. In response, 10 days later, Harford basically said, unless we hear from you within 24 hours that you're transferring the entire defense to ensure retained counsel, all our obligations are terminated. So, they really weren't interested in talking about 533 and whether or not Harford would still rely on 533 as a bar to coverage. I still wanted to know where that argument was covered in your view. The argument that... You said you covered the factual part of it, but was there a legal argument made in your briefing that... The argument was that... That the insurance company could rely on 533? Yes, the argument was that CyberNet is entitled to summary judgment, because the insurance company could rely on insurance code section 533 to bar claims. The fact that the insurance company could rely on 533 created a conflict of interest for insurer retained counsel, because the insurer retained counsel could steer the litigation towards willful acts which are barred by insurance code section 533. And that was the argument that insurer retained counsel could vigorously defend copyright infringement, but not so vigorously defend or gather evidence or exculpatory evidence on the knowing or willful aspect of copyright infringement. Well, isn't that... You know, your opponent, I think, referred to that as perhaps an inconsistent defense, which you get more in criminal cases, I suppose. You know, the defendant says, I wasn't there, but if I was there, I was crazy. Well, under criminal law, he's entitled to say that, but it's not something that any intelligent defense lawyer is going to try and raise. Here, I think what your opponent is saying is that the defense lawyer would say there was no infringement. But if there was infringement, it was willful. Well, how do you do that? I think any comprehensive defense would have two elements to it. You also have the fallback. Number one, there was no infringement. But what if they do find infringement? Then you have to address the issue of damages. You want to mitigate any exposure for your client. So what you do is you gather exculpatory evidence to say any infringement. There's no infringement, but if there was an infringement, it was innocent. It was not willful. It was not intentional. It was not intended to bring about the harm. So I guess what we can say is the defense counsel could mount the first argument and say there was no infringement, but not gather the evidence with regard to willfulness and just basically not make that backup argument that if there is a finding of infringement, that it wasn't willful. It was negligent. The position would be consistent on liability, but part on the issue of damages only? Yes, Your Honor, but the problem is on the issue of damages in this particular case, the factual issues that would be decided in assessing damages overlap with the insurance coverage issues. So necessarily when the defense counsel addresses the issues of damages and they're litigated in the underlying case, they would have a direct impact on the coverage issues because the coverage issues pertain to whether there is willful or intentional conduct, and that's the same exact issues that are being determined on a finding of damages on this kind of sliding scale of scienter for a finding of statutory damages or enhanced damages under 17 U.S.C. Section 504. The other thing that I wanted to point out to the court was counsel for Harford kind of gave the impression from the record that CyberNet was just refusing to allow insured counsel to just associate in to monitor the proceedings. I think the record establishes that on August 15th, Harford issued the second reservation of rights letter, but on August 21st, six days later, they were asking CyberNet not to just allow insured retained counsel to associate in, but to transfer the entire defense from Harford's counsel who was defending to insured retained counsel. So it wasn't a matter of just let insured retained counsel associate in and let them monitor the proceedings. It was you are to transfer your entire defense to insured retained counsel. Now, given the magnitude of that request, it would only seem natural that CyberNet would then ask for qualifications and at least make absolutely sure that there was no potential conflict of interest in that transferring a defense, the entire defense to insured retained counsel. So finally, Your Honor, I would submit to the court that there was an actual conflict of interest giving rise to independent counsel because insurance code section 533 was still in play and there was an overlap of issues in the coverage issues regarding intentional and willful conduct and the enhanced damages issues, which are the exact same factual issues we resolved, whether the insured's conduct was intentional or willful for purposes of enhanced damages under 17 U.S.C. section 504. Given this conflict, CyberNet therefore had a right to independent counsel. Harford, through its ultimatum that the entire defense be transferred to insured retained counsel or that's obligated to be terminated, was unreasonable as a matter of law. And therefore, I would request that the court reverse the district court's ruling, finding summary judgment in favor of Harford and in turn grant CyberNet's partial motion for summary judgment, only leaving the issue of damages to be resolved in the district court. Thank you. Thank you, Mr. Segura. CyberNet Ventures versus Harford Insurance shall be submitted. We appreciate the vigorous argument on both sides. Thank you.
judges: Beezer, Gould, T. Nelson